We're first sitting to hear NLRB v. Newark Electric Corporation, No. 182784. And we're delighted to have with us District Judge John Kodal, who's a wonderful colleague. And after argument in this case, we'll briefly adjourn, and then we'll hear argument in the motion calendar for this morning, and then the regular day calendar. I'm advised otherwise that everyone is here who should be here, and so we will proceed to hear argument in the Newark Electric case. Thank you. Please proceed. Good morning, Your Honors. May it please the Court. My name is Ed Trivette with the Harris Beach Firm, representing the respondents and the appellants in this case. To the extent that I don't get a chance to talk about everything today, which I probably won't, I will rely on whatever is in my briefs to cover those points that are not covered. The threshold issue for me in this case is one of jurisdiction, and particularly the issues that involve the Federal Vacancies Reform Act and how that applies to this case. There's no question here that the complaint against the respondents was filed when Acting General Counsel Leif Solomon was serving in violation of the Federal Vacancies Reform Act, the FVRA. There's also no question that the respondents timely raised the FVRA as a jurisdictional defense and pursued it throughout the litigation from the very beginning when it answered the NLRB complaint through the second, through the D.C. Circuit and so forth. The question here really is how, what legal effect, what is the legal effect of this violation of the Fair Vacancies Reform Act? The Third Circuit and the D.C. Circuit have explored this issue in some detail. What is wrong with their analyses? Their analysis I don't believe addresses my major point here, which is the decision in Southwest General, the Supreme Court case and other cases, doesn't go to whether or not, as applied to the NLRB General Counsel, whether or not the FVRA provisions are constitutional or whether or not they violate the appointments clause. And I've discussed that in the brief and in particular. Yes, Judge. Isn't the D.C. Circuit decision law of the case for us because it demanded to the NLRB to determine whether the prior decision should be ratified? So we would have to say that the prior decision of the D.C. Circuit in this case was wrong. Well, what I think you need to focus on, Judge, is not that, but whether or not the rationale for ratification can stand constitutional muster. But it is law of the case for us, isn't it? What the D.C. Circuit did in this case, while remanding to the NLRB to determine whether there would be ratification in this case. I don't believe so, Judge. I believe you can revisit that decision. I believe you can look at the constitutional aspect of this problem. Okay. We can do many things. We can revisit. The only question is, don't we start from the proposition that what the D.C. Circuit did is law of the case for us? At least with respect to those issues it decided. It did not look at the issue of whether the FVRA was constitutional. It simply remanded that to see whether or not the NLRB general counsel was going to try to ratify the decision of Leif Solomon. So I think that issue is before this Court legitimate. There was a ratification here, was it, though? There was a ratification before the new general counsel, Mr. Griffin. Yes. In fact, ratified it on August of 2017. So that's the key issue. Whatever happened before, if that ratification is okay, then does that end the inquiry? I don't believe so, Judge. I believe the inquiry starts there. Do you accept that there was a ratification? Yes, Judge. And hasn't the D.C. Circuit and the Third Circuit, as has been pointed out, supported similar ratifications, if not this one? They have, but none of those courts have gotten to the issue that I'm trying to get to here, which is whether or not — What's different? The issue in those cases didn't involve a challenge to the constitutionality of the provisions of the FVRA as it applies to officers, principal officers, such as Mr. Solomon and the NLRB general counsel. And so if you get to that issue, I think — Why does that matter? I mean, if it was illegal to do what they did initially, constitutionally or otherwise, but it was subsequently ratified by the new general counsel, then the action that was taken by the new general counsel would be the operative act, right? And so that's the only focus, whether he ratified it. And whether ratifying something that was unconstitutionally done before by someone who is constitutionally appointed is satisfactory. And that is what has been held, right, in these other cases. Not exactly. I think you may be wasting your time here. But anyway, I'll let you — you can decide how you want to spend your minutes. Well, I do want to make the point that the issue is whether or not General Counsel Griffin's ratification was based on a lawful basis. And that's what gets to the constitutional issue. And so I would argue that if you look at the cases and you look particularly at Justice Thomas's concurrence, which I understand is not precedent, it's just, I believe, persuasive, though, it gets to the issue of the constitutional nature of whether or not he could have — Lafe Solomon could have been appointed even during his regular term without the advice and consent of the Senate. And because he was never validly appointed, none of his acts were proper. And they were all void. You're saying they were not subject to ratification? Because — Is that what you're saying? So the Federal Vacancies Reform Act would be unconstitutional as applied to him because of particularities of his appointment on the board? Precisely, Judge. Is that right? Yes. Now, let me skip to the other argument real quickly because my time is running short. And the other argument based on the Federal Vacancies Reform Act is a waiver argument. And that was presented to General Counsel in our position statement, which appears at the appendix in pages 38 and 39. And it was interesting because the position statement was actually rendered after General Counsel rendered a decision, even though our time to submit a position statement hadn't elapsed yet. And that's — that chronology has gone through in the briefs. But specifically, I rely on the Ninth Circuit's case and the Hooks v. Kitsap case that basically held because the NLRB did not raise the issue of being able to rely on the exemption clause in the FBRA as a basis for ratification. Because it didn't do that from the get-go, it had waived that defense. And I submit to you the same happened in this case. With respect to our case, it is on all fours on this issue with the Hooks case out of the Ninth Circuit. And so I would say that we had raised all along the issue of the illegality. General Counsel did never raise as an issue of ratification in a timely fashion the ability to rely on this exemptions clause in the FBRA. And that being the case, it can't do so now. And if you take that basis of ratification away, which I believe you have to, then the whole ratification goes away and the petition to enforce must be denied. And the case is dismissed. You also argue that the ratification in this case was not true ratification because you didn't get an opportunity to make all of your arguments that you wanted to make, particularly latches, right? I have made that argument as well, Your Honor. And that goes to the chronology of events, because even after we submitted our position statement, there was no revisitation by General Counsel that I ever saw to consider that issue. The only thing that the original ratification, which was done before, the day before our time to submit a response, never changed, and they just proceeded forward. But the Board did consider your argument of latches. They have a footnote that rejected it. I believe that is true, Your Honor. And there's nothing in your briefs to us, at least as I remember them, as arguing that there really is a sufficient latches argument in the case. I mean, we couldn't read your briefs and conclude you're right on the issue of latches. This is something that really the Board should have considered with more consideration than the footnote that they gave it. I would submit that they should have, but I understand and don't disagree with what you said, Your Honor. Okay. All right. Thank you. Okay. So I think at this point, what I will do is wait for my rebuttal time and cede to counsel, please. Very good. Okay, we'll hear from the government. May it please the Court. My name is Meelakshmi Rajapaksa. I'm counsel for the National Labor Relations Board. I'd like to focus on the ratification issue and related issues, since that is what the companies appear to be most interested in today. I will say, however, that based on the briefing in this case, it should be fairly clear that the companies are relying largely on discredited testimony and ignoring the documentary evidence and the record in arguing against the merits of the Board's unfair labor practice findings. On the ratification issue, it is critical to acknowledge at the outset that Section 3348 of the Federal Vacancies Reform Act, or FEVRA, allows the General Counsel of the National Labor Relations Board to ratify the actions of a predecessor who served in violation of FEVRA. Here, General Counsel Griffin acted entirely consistent with the permission given to him under the clear terms of FEVRA. And he also acted consistent with the general law governing ratifications when he conducted an independent evaluation of the merits of this case and determined to ratify the actions of his predecessor, Leif Solomon, who was acting in violation of the Federal Vacancies Reform Act. And he decided... The record reflects that he gave this an independent and full evaluation. Isn't that right? He issued a notice of ratification explaining exactly what he did and that he had decided to ratify the complaint and its continued prosecution. What the companies are essentially doing today are sort of two things. Let me just follow up for a second. Do you think it would have been better practice maybe to issue a more full explanation that gives substance to the independence of his later review? Your Honor, I can't say what would be better, but I can say that there is nothing irregular about using the same language to describe what was done to consider a case and ratify a complaint. He used the same language across different cases, but there's a presumption of regularity that applies in this situation. It is presumed that he did what he said he did, and absent clear evidence of an irregularity, there's no basis to throw aside his representations and call them into question. So... The Third Circuit, the D.C. Circuit have said ratification is proper under similar circumstances. Have any other circuits decided this issue? No, not at this point. But I will say the D.C. Circuit in Midwest Terminals, which is the case that the Board raised to the Court's attention in a 28-J letter, that case involved a ratification at the same procedural point in time as the ratification in this case. So it was on remand from the D.C. Circuit that the General Counsel also ratified the complaint in that case. And in Midwest Terminals, the D.C. Circuit upheld the ratification as valid. Really, the practice in these ratification cases is, again, absent clear evidence of an irregularity to take the ratification at face value and to uphold it. And ratification is a, as the D.C. Circuit has said in the Wilkes-Barre case, it can remedy a defect arising from the decision of an improperly appointed official when a properly appointed official undertakes an independent evaluation of the merits. And that is precisely what happened in this case. In asking the Court to look at the so-called Appointments Clause issue, the companies are essentially saying that ratification should not have been an option. But in terms of the current state of the law, it is an option. And the D.C. Circuit remanded this case to the Board with the understanding that FEVRA expressly allows for ratification as one option for the General Counsel where you have a FEVRA violation like this. And so for the companies to ask the Court now to consider the Appointments Clause argument they're making essentially would have the Court undo what the D.C. Circuit has done in this case and to go back to zero and consider the actions of an earlier General Counsel that have already been essentially rehabilitated through ratification. The Board does not believe that there's any – Sotomayor, are we bound by the D.C. Circuit's decision? It's the law of the case. So I would say as a matter of comedy between courts, it's a subtle principle that it should – the D.C. Circuit's decision should be respected. Absent some evidence of clear error, that it was clearly erroneous or some manifest prejudice is present, and the company hasn't attempted to make either of those showings in this case. So there's really no basis for the Court to set aside what the D.C. Circuit did. In terms of the merits, I'll just go quickly to the merits of the unfair labor practices. The companies before the Court in this case, the Board found they are a single employer and alter egos, which means that they're substantially identical in terms of their ownership, management, operations, labor policy. There are several factors that the Board took into account. The companies essentially cannot, on this record, seriously dispute their identity in terms of what is relevant before the Court. And one of the companies – I'm going to conclude that the – when the second letter of assent was written, it merged with the first letter of assent. That – that – the second letter terminated everything. Well, that – the problem for the company is there are two letters of assent. Right. And there's no credited evidence that the second letter superseded the first letter. No. It's – except that isn't – under New York law, isn't a second letter that follow – a second agreement that follows a first agreement by the same parties, doesn't it carry forward, in effect, subsume that first agreement? Under a doctrine of merger. Right. The company – I don't think the companies have made that argument under New York law. In addition, I will say these are not – the companies are relying on this idea that these are identical agreements. But they are not identical. In one critical – Right. The effective dates are different, which is critical because then that also affects the termination requirements and time frames. So the first letter of assent – I understand that it wasn't – the termination of the second letter did not comport with the termination requirements of the first letter. That's correct. But if there was a – in effect, if the law treats it all as one contract under a doctrine of merger, and I think there is some law to that effect, although they may have waived it by not arguing it, that would – that would resolve that problem in their favor. Right? If it was all one agreement and the termination dates were as specified in the second letter, and the termination occurred within that period, then that would allow the termination. Right. I would say that the Court really, under Section 10e of the Act, is foreclosed from considering any such claim because the companies didn't raise that kind of contractual argument before the Board. And under Section 10e of the Act, any claim that is urged before the Court must first be urged before the Board in order for the Court to have jurisdiction of the argument. So I would say that that's foreclosed. As the Court appreciates, this first letter of assent was never properly terminated. And because the companies are one in the same in terms of their contractual liability and their liability for unfair labor practices, all three companies are bound by that first letter of assent. And the effect of that first letter was to bind the signatories to a master collective bargaining agreement between the National Electrical Contractors Association and the union. And that agreement automatically renews from time to time. The companies had a window of opportunity to terminate their, to withdraw essentially from this arrangement. They didn't take advantage of that opportunity, which was on February 21st, 2012. So they missed their window to terminate the letter of assent. They also missed their window to withdraw from the arrangement at a later stage. And our review is for substantial evidence, right? Exactly. And there is certainly substantial evidence, and it's largely documentary evidence in this case. Documentary evidence and credited testimony that shows that the companies repudiated their contractual obligations. There really isn't a dispute that they did that. It's more a question of whether all three companies were in fact obligated, which they were. And then there's also a Section 8A3 finding that the companies discharged an employee in the wake of this decision to repudiate the relationship with the union. They discharged a member of the bargaining unit who was a union member because of his union membership, which is again a clear violation of the Act. So the Board would request full enforcement of its order. Thank you. Thank you. Mr. Truvette. Thank you, Your Honor. Briefly, when talking about the ratification issue, they said there was no irregularities. There was a glaring irregularity. The ratification notice was given before my client had a chance to submit his position statement. That in and of itself is a glaring irregularity. That's number one. To address the other issue on the merits, picking up on the judge's point, which apparently is an argument you didn't make. Well, Judge, I think we did make it in substance because what we said was they're trying to have it both ways. They're trying to bifurcate the legal consequences with their legal theory. They're trying to say you're bound because you're a single employer alter ego, fined, to rope in that first letter of assent. But then they're saying you can't also enjoy the benefits of that status when you terminate the second letter of assent to terminate all the relationships with the union. And, Judge, that's the issue we've taken issue with, and I think that has been argued in brief. Thank you for your time, Your Honors. Thank you very much. It was a pleasure. Thank you. Thank you. Very nice to have you here. Well argued. We'll take the matter under advisement, and we will take a very